BOYER v. VILLAGE OF LITTLE FALLS.

(Supreme Court, Appellate Division, Fourth Department. April 18, 1896.)

1. CORPORATIONS — FAILURE TO EXERCISE FUNCTIONS — FORFEITURE OF FRAN- CHISE—COLLATERAL ATTACK.
    Though a corporation, chartered to maintain a private system of water- works, ceased to exercise its corporate functions, its right to do so cannot be collaterally attacked in an action by an individual who succeeded to its property interests against a village for the destruction of said water- works.

2. WATERWORKS COMPANY—POSSESSION OF LAND—TITLE AS AGAINST VILLAGE.
    A waterworks company and its successors having occupied land in connection with its franchise for 80 years, its possession thereof ripened

into a perfect title as against a village which injured the waterworks, and therefore it was no defense to an action for such trespass that it did not appear that said company paid for said land as required by its charter.

3. SAME—HIGHWAYS—RIGHT TO CONVEY WATER UNDER SURFACE.

As the controversy between the parties was over the right to convey water under the surface of the highways, and as the right of plaintiff antedated the incorporation of defendant village, and it was not found that the fee of the streets was in said village, the principle that no adverse or prescriptive right could be obtained by occupation and claim of title in a highway against the public could not be invoked by defendant.

4. SAME—TRESPASS BY VILLAGE—ELEMENTS OF DAMAGE.

In estimating damages for the destruction of a portion of a private waterworks system by a village the referee may consider evidence of the value of the water rights at the time they were invaded, the number of customers supplied, and the rent paid by them, the effect upon the water conduits that were exposed to the air, and the injuries to the pipes and apparatus.

5. SAME—EVIDENCE—OPINION OF WITNESS.

Though the injuries to said waterworks occurred while defendant was engaged in putting in its own plant, it was not competent, in diminution of plaintiff's damages, to ask a witness the reason why he discontinued the use of the water supplied by plaintiff and put in city water.

6. SAME—HARMLESS ERROR.

It was harmless error to refuse to permit a witness to give his opinion as to the value of plaintiff's waterworks when the village plant was substantially completed, where he was afterwards permitted to testify that the construction of the city works rendered plaintiff's works useless.

Appeal from judgment on report of referee.

Action by Nancy M. Boyer against the village of Little Falls for trespass in destroying plaintiff's waterworks system in said village. From a judgment entered in the county of Herkimer upon the report of the referee in favor of plaintiff for $2,564.40 on the 21st day of May, 1895, for damages and costs, defendant appeals. Affirmed.

Argued before FOLLETT, ADAMS, WARD, and GREEN, JJ.

J. D. Beckwith, for appellant.

J. A. Steele, for respondent.

WARD, J.    The plaintiff, in her complaint, alleged she was the owner of certain springs of water situate in and near the village of Little Falls, and a system of waterworks leading from said springs into the said village, consisting of logs and other conduits and pen stocks, by which the inhabitants of Little Falls, or a large portion thereof, were supplied by the plaintiff with pure, wholesome water from said springs, and from which she derived a large revenue, in the sum of about $1,200 annually; that on or about the 1st day of May, 1887, the defendant, by its agents, wrongfully and unlawfully took up and destroyed said logs and other conduits, cut off said pen stocks, and removed the same, and wholly destroyed the said system of waterworks, and the value of the use of said springs, to the great damage of the plaintiff; that the defendant was a municipal corporation organized under the laws of this state. The defendant answered, denying the allegations in the complaint except that of its incorporation, and alleged that in the beginning of the

year 1886 it commenced within its corporate limits the construction of a system of waterworks, and continued such construction during said year and the three years following; that in constructing said system of waterworks it became necessary to remove any and all obstructions found in defendant's streets, in order that the work of laying the mains, conduits, and pipes constituting said system might be properly and efficiently done; that it had been duly granted a franchise for that purpose by the legislature of the state; that the plaintiff was never granted any right to construct the system of waterworks set out in her complaint by the defendant or any party of competent jurisdiction having the right to confer the same. The action was commenced in March, 1890, and was referred to a referee for trial, who, after a patient hearing, found that the plaintiff was entitled to recover from defendant damages to the amount of $1,400, with interest from August 1, 1888. Upon the trial, after the plaintiff had given her evidence, and the defendant had sworn a single witness, the parties rested, and announced the evidence as closed, with right to submit briefs on either side. The defendant moved for a nonsuit for several reasons, which was denied. Soon thereafter the defendant, upon affidavits, moved to reopen the case before the referee, to give further testimony, which motion the referee decided to grant conditionally. He allowed the case to be reopened so as to permit the defendant to offer additional evidence upon the value of the plaintiff's system of works, and to show that the interference of the defendant with those works did not take place earlier than 1888, and that the plaintiff's pump logs were rotten or defective; that the defendant had put in a system of waterworks in the village, and that the customers of plaintiff's system ceased to be such, and became customers of the defendant; and that the defendant was not responsible for the acts of the persons who destroyed the plaintiff's system. Considerable proof was given under this permission.

The referee, in his decision, made findings of fact and law. The second finding of fact states that in 1805, William Alexander and others formed themselves into a voluntary association for the purpose of supplying themselves and others with water from a spring which was located at the eastern part of the village of Little Falls by means of wooden conduits known as "pump logs," and proceeded to introduce a system of water supply. He finds, further, that in 1806 the legislature passed an act, being chapter 45 of the Laws of that year, entitled "An act to incorporate an aqueduct association in the village of Little Falls in the county of Herkimer," and created the said William Alexander and others a body politic with the power to enter upon and make use of lands for the purpose of conducting a supply of water to and through the village of Little Falls, provided consent was obtained from the persons through or over whose premises pipes or aqueducts might pass; that this corporation organized, appointed its officers, and enacted by-laws, adopted a seal, issued scrip certificates of stock, held stated meetings, and kept regular minutes of its meetings up to 1851; that prior to 1851 one William Usher had purchased some of the stock of the corpora-

tion and in that year he purchased all the remainder of such stock, and became the sole owner of the water-supply system, and carried on the business, supplied the people with water, for which he received water rents; that from the said William Usher, through various mesne conveyances subsequently and prior to 1888, the said spring and the lot upon which it was situate, with the appurtenances, which included the pump logs and pen stocks above stated, were conveyed to this plaintiff, all of which conveyances were duly recorded, and in the summer of 1888 the plaintiff was the sole owner thereof; that for several years prior to 1888 the plaintiff had maintained the said water-supply system, and had supplied a number of the inhabitants of the village of Little Falls with water in the way heretofore indicated, and for which she received water rents, which resulted in a considerable net income to her; and the seventh finding sets forth:

"That pump logs were laid in the ground, and covered at various depths, as the soil permitted, some places at a depth of two feet or more, and, when rock came near the surface, some portions of the logs were not wholly covered; and pen stocks were erected at various places, to which most of the customers resorted for water, but some were supplied in their houses by means of iron pipes from the pump logs. Some of the logs had been laid for many years and some were comparatively new, and they were in various stages of preservation; some reasonably sound and some considerably decayed. While kept intact, covered, and undisturbed, such logs would last for many years, but when taken out or exposed to air, or air allowed to enter the logs at their ends by reason of their being disconnected, they were exposed to more rapid decay."

The eighth finding of fact was as follows:

"In the early summer of 1888 the plaintiff was supplying water to her customers in Little Falls from her said supply system, and for that purpose had her pump logs laid along several streets in the way hereinbefore indicated, and had several pen stocks located at different places for such use. At that time the village of Little Falls, under statutes giving due authority for that purpose, had determined to put in a water system on large scale, and at great cost, and in the summer of 1888, commencing in June or July, the street commissioner of the village, and men in his employ, under the direction of the president of the village, cut down a number of the plaintiff's pen stocks, and dug up and threw out a number of the plaintiff's pump logs, thus disconnecting her water system, and allowing air to enter the remainder of her logs to a considerable extent; and such action, at least in part, either directed to be done or sanctioned by the board of trustees of the village. The contractor employed by the village to construct its system of waterworks also in the necessary prosecution of that work tore up several of the plaintiff's pump logs with the same effect. For considerable time the plaintiff's business was thus interrupted by the acts aforesaid, and her revenue for water rents cut off. In some instances she attempted to repair her broken system which had been interfered with as above stated, when the repairs were torn out by the street commissioner by order of the president of the village. The plaintiff's spring or source of water supply was not interfered with, nor was her whole system of logs or conduits interfered with, but the interference consisted of breaking through the system, and taking out logs in several places, and in cutting down the pen stocks, and in plugging plaintiff's logs. Such acts totally destroyed the pen stocks and the logs taken out, and damaged the remaining logs to a considerable extent by allowing air, etc., to enter them. The extent of the last-mentioned item of damage is necessarily somewhat problematical, but I think certain; and, taking all her damages together, I think $1,400 will not more than fairly indemnify her, and I find she has sustained damages by reason of such acts in the sum of $1,400."

The evidence discloses that from the time of the incorporation of the water company, in 1806, down to the time of the commission of acts of which the plaintiff complains, the plaintiff and those under whom she claims had been in substantial possession and control of the system of waterworks of the plaintiff, without hostility or hindrance from any source, for a period of over 80 years.

The village of Little Falls was first incorporated by chapter 276 of the Laws of 1826, but no steps were taken by the village to create waterworks of its own until 1886. The defendant then attempted to establish its waterworks through the village, without in any manner compensating the plaintiff for her property interests, or procuring condemnation thereof, claiming the right to do so under the power given it by statute to establish waterworks. The findings of the referee above quoted are fully sustained by the evidence. The acts of the defendant were without authority of law or color of right so far as they interfered with the plaintiff's property rights in the matter.

Upon this review it is insisted by the learned counsel for the defendant that the acts of the president and street commissioner of the defendant were not authorized by the defendant; at least the proof did not disclose that authority. We cannot assent to this view, for the proof is abundant that this corporation not only authorized the acts complained of, but adopted them for its own benefit in constructing its waterworks.

The appellant further contends that the water company incorporated in 1806, by its failure to exercise any corporate functions since 1851,—about 37 years prior to the alleged injury,—and by the death of the principal incorporators, forfeited whatever corporate rights, franchises, or privileges it ever had or possessed, and that no competent evidence was given upon the trial showing any transfer of any corporate rights, franchises, or property from said aqueduct association to William Usher. Whatever might be held in a direct proceeding by the proper authorities to dissolve this corporation and dispose of its property, the corporation or its property rights cannot be attacked or adjudicated upon collaterally. The privileges and franchises granted to a private corporation are vested rights, and cannot be divested or altered, except with the consent of the corporation, or by forfeiture declared by the proper tribunal. McLaren v. Pennington, 1 Paige, 101; In re Reformed Presbyterian Church of City of New York, 7 How. Prac. 476; People v. President, etc., of Manhattan Co., 9 Wend. 351; Bank of Niagara v. Johnson, 8 Wend. 645. The defendant, a wrongdoer, assailing the plaintiff's title in this action, can neither assert that the old corporation is destroyed, nor that its franchises are forfeited, nor can the property of that corporation be confiscated by a trespass. The evidence that the property interests of this corporation had passed to Usher was received without objection, and is not contradicted in the case, and is sufficient to sustain the referee's findings upon that subject. The corporation whose rights we are considering was simply a business corporation, and we see no reason why its property interests could not be transferred to an individual, or at least why an individual,

by becoming the owner of its stock, should not become the substantial owner of all the property of the corporation. It is well said in People v. O'Brien, 111 N. Y. 41, 18 N. E. 692, that:

"The laws of this state had made such interests taxable, inheritable, alienable, subject to levy and sale under execution, to condemnation under the exercise of eminent domain, and invested them with the attributes of property generally. * * * The implication arises not only that the state intended to invest these franchises with the character of property, but also to enable their mortgagees, purchasers, and assigns to enjoy their use under an indefeasible title."

It is not intended here to assert the proposition that corporate powers or franchises can be transferred by the corporation officers to an individual or to a private person. That can only be done by legislative sanction. What we do affirm is that the property of a business corporation merely can be vested in one or more individuals to an extent, at least, that it cannot be assailed collaterally. In a direct proceeding to dissolve the corporation and distribute its property, the fact that the corporation has ceased to discharge its corporate functions, and permitted its property and business to pass into the hands of individuals, may be a good reason for the state to withdraw the franchise which it had granted, and to distribute its property; but, in that event, the property of the corporation is not lost or forfeited. Upon the dissolution of the corporation the claims of its creditors must first be satisfied out of its property, and what remains must go to the bondholders, if any exist, or to the stockholders of the corporation, as the case may be.

The appellant also objects that it does not appear that the old corporation ever paid for the land used in connection with its franchise, as required by its charter. This objection comes rather late after an occupancy of 80 years. It would seem from that length of time that we may presume a grant from the landowners, or that a title has matured against them by adverse possession or prescription. But it is unnecessary to found the plaintiff's right to recover in this action upon a valid or any transfer from the old corporation of the water privileges which she possessed. The long and unchallenged occupancy and use of these premises and privileges that the plaintiff and her grantors have enjoyed has ripened into a perfect and complete title as against the defendant. Washb. Easem. 114. Indeed, possession alone gives a sufficient title to the possessor as against a wrongdoer. Nor can the defendant avail itself of the position asserted in many cases that no adverse or prescriptive right can be obtained by occupation and claim of title in a highway, as against the public. The controversy here is not between the plaintiff and the public, but between parties who are having a controversy over the right to convey water under the surface of the highways for those who reside upon them. The right of the plaintiff antedates the incorporation of the village of Little Falls. It is not found by the referee, or alleged in the defendant's answer, nor have we discovered in the evidence, that the fee of the streets of Little Falls was in the village.

The appellant also contends that the referee erred, as indicated by his eighth finding of fact, in the basis he adopted for fixing the dam-

ages, for it is claimed that the referee finds that the plaintiff is entitled to and allows her for three distinct kinds or elements of damages: First, by direct injury to the works; second, by interruption of her water supply to consumers, and consequent loss of revenues; third, by the more rapid decay of her whole system of logs, resulting from air being allowed to enter the system at places where the logs were taken up. From an examination of this eighth finding as above set forth, it will be difficult to sustain the construction given it by the appellant in this regard. The plaintiff's evidence spread the whole situation before the referee without objection. The opinion of a witness was given as to the value of the plaintiff's water rights at the time they were invaded. Evidence was also given of the number of customers she had, the rent they paid, and the effect upon the pump logs that were exposed to the air, the pen stocks and pump logs destroyed or rendered useless, and other pertinent facts bearing upon the damages which the plaintiff had sustained. The referee was therefore at liberty to pass upon all this evidence in fixing upon the plaintiff's damages, and we see no error in this. The plaintiff was entitled to recover such damages as naturally and necessarily flowed from the injuries complained of.

The appellant makes a point that the damages are excessive. The evidence abundantly sustains the referee's findings in this regard; and, indeed, if the respondent had appealed from the judgment on account of the insufficiency of the damages allowed, a more serious question would have been presented. A glance at some of the evidence as to the plaintiff's damage will show the extent of her business and interests that were substantially destroyed by the defendant. One witness testified that in the year 1887—the year before the injuries complained of—the plaintiff was supplying water to four hotels in Little Falls at a yearly rental in the aggregate of $450. She was furnishing water to 128 other customers, who paid a yearly rent in the aggregate of $1,019. Another witness testified that her water rents charged in 1886 were $682.56. Of course, the expenses and repairs should be taken out of these rentals. There was considerable evidence given as to the net profits of the business. One intelligent witness, who had been a water commissioner of the defendant, testified that an investment of capital which would yield an annual income of but $100 was worth $1,666. Many hundred feet of the plaintiff's pump logs were destroyed or rendered useless by absolute interference by the defendant. It is not contended but what the defendant had a right to establish waterworks in the village of Little Falls, but if, in doing so, it interfered with the vested property rights of others, it must make due compensation. Whether the defendant would be permitted, in any event, to interfere with the plaintiff's system of waterworks by destroying any portion of it, even upon paying compensation, is a question not necessary now to determine.

It only remains to consider certain exceptions taken to the rulings of the referee in regard to the reception of evidence. One George W. Shall was sworn as a witness, and he testified that he changed from the plaintiff's water to city water while they were putting in

the city water, and he was asked the question, "Why did you discontinue the use of the Boyer water, and put in city water?" It was objected to by the plaintiff as not admissible under the pleadings, and not within the order allowing the case to be reopened. The objection was sustained, and the defendant excepted. The inquiry was after the operation of the witness' mind upon the subject, and was not competent for that reason; nor was it within the permission given to the defendant in reopening the case. In no event could it affect the question of damages, in view of the great mass of evidence upon that subject.

Error is also claimed in the court not permitting the witness Burrell to give an opinion as to the value of the Boyer pump-log system about June, 1888, at the time when the village waterworks were substantially completed. On turning to the question really asked, it was whether the witness had a judgment as to the value of this system, which was rejected upon the ground that the witness had not shown himself competent to give an opinion upon the subject. If any possible error could arise from that, it was cured by his subsequent answers which were permitted, and one of them was to the effect that the construction of the city works had superseded the Boyer system, and rendered it valueless.

Another error alleged is the refusal of the referee to permit the witness Babcock to show the supply of water for the defendant system. This was clearly immaterial, as there was no controversy upon that question, and it was of no importance in determining the questions in the case.

The other exceptions urged by the appellant we do not deem worthy of consideration. We find no reversible error in this case.

The judgment should be affirmed, with costs. All concur, except HARDIN, P. J., not voting.