RODDY v. BROOKLYN CITY & N. R. CO. et al.

(Supreme Court, Appellate Division, Second Department.  July 11, 1898.)

1. RAILROADS—CONTRACT FOR USE OF OTHER ROAD—VESTED RIGHTS.
   The provisions of Laws 1839, c. 218, authorizing "any railroad corporation to contract with any other railroad corporation for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed in such contract," conferred a property right, free from the necessity of any consent of a municipality or of property owners, which could not thereafter be taken away or impaired, either by legislative enactments or constitutional change, except in the proper exercise of the right of eminent domain or the police power.

2. SAME—APPLICABILITY TO STREET RAILROADS.
   This provision was applicable to street-surface roads, as well as to steam railroads.

Appeal from special term, Kings county.

Action by Hugh V. Roddy, Jr., against the Brooklyn City & Newtown Railroad Company and the Brooklyn Heights Railroad Company. From an order denying plaintiff's motion for injunction pending the action, he appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Samuel S. Whitehouse, for appellant.

William N. Dykman, for respondent Brooklyn City & N. R. Co.

Charles A. Collin (William C. Trull, on brief), for respondent Brooklyn Heights R. Co.

HATCH, J.  The plaintiff is a property owner, owning land which abuts upon Washington street, in the borough of Brooklyn. The Brooklyn City & Newtown Railroad Company is a street-surface railroad company, having a franchise for, and operating its railroad through, Washington street. The Brooklyn Heights Railroad Company is also a street-surface railroad company, having a franchise for, and operating its cars upon, Montague street, in said borough. It is also the lessee of the Brooklyn City Railroad Company, a street-surface railroad company having a franchise for the operation of its cars upon Fulton and other streets in said borough. The first of these corporations was organized pursuant to chapter 140 of the Laws of 1850, and by chapter 165 of the Laws of 1872 it was authorized to construct and operate its road upon Washington street. The second corporation was organized pursuant to chapter 252 of the Laws of 1884. Its lessor, the Brooklyn City Railroad Company, was organized pursuant to chapter 140 of the Laws of 1850. The lease of its property franchises and rights is for the term of 999 years. The first and second named of these corporations have entered into a traffic agreement with each other, whereby the Brooklyn Heights Railroad Company has acquired the right to run and operate its cars over the tracks of the first-named company, through Washington street, to the New York and Brooklyn Bridge, over which structure both companies operate their cars. It is asserted by the plaintiff, and such is the conceded fact, that neither the Brooklyn Heights Company nor its

52 N.Y.S.—65

lessor has ever acquired any franchise from the municipal authorities to run and operate its cars in and upon the tracks laid in Washington street; nor has it obtained the consent of the owners of one-half in value of the property bounded upon such street so to operate; nor has it made application for such consent either to the municipality or to the property owners. For this reason the plaintiff contends that such use of the street is an unlawful act upon the part of the defendant corporations; and, as it incre: ses the burden of use upon such street, obstructs the same, and renders it dangerous, its usefulness as a street is seriously impaired, the plaintiff's property is damaged, and he is left without adequate remedy at law. We are therefore to see what the legal rights of these corporations are, and whether they are acting within such rights.

At the time when the Brooklyn City & Newtown Railroad Company and the Brooklyn City Railroad Company were organized, chapter 218 of the Laws of 1839 was in force; and whatever property right accrued to or vested in these corporations at that time, by virtue of their charters or other law, to all of which the lessee company became entitled by reason of its lease, could not be thereafter taken away or impaired, either by legislative enactment or constitutional change, except in the proper exercise of the right of eminent domain, and of the police power. People v. O'Brien, 111 N. Y. 1, 18 N. E. 692; Mayor, etc., of New York v. Twenty-Third St. R. Co., 113 N. Y. 316, 21 N. E. 60. The reserved right in the legislature to alter or repeal the charters of such corporations may and often does raise grave questions respecting the limit of its exercise, and in determining the quality of the legal right reserved. But, so far as property right is concerned, there can be no question. The constitution of the state has always protected such right against the action of the legislature, under whatever guise it has been attempted, while the federal constitution operates as a restraint upon constitutional legislation if resort be had to such action. The act of 1839 is without limit in its language as to the character of railroad to which it should apply. It was quite as necessary a provision for street-surface roads as for railroads operated by steam; and we believe its provisions to have been generally regarded as applicable to both classes of roads, and think that no sound reason can be advanced why it should not be so considered. By its terms it was made lawful "for any railroad corporation to contract with any other railroad corporation for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed in such contract." The plain language of the right thus conferred did not require for its enjoyment the consent of the municipality or of the property owner upon the street; its exercise rested alone upon the ability of the corporations to reach an agreement, and carry that agreement into effect. Did this right thus reserved to these corporations when they respectively received their charters vest in them a property right? For it is clear that they became as much entitled to the benefit of whatever property right was obtained by this law as they did of any right vested in them by their charters. Indeed, this was a privilege embodied in it. It has never been doubted but that the right to lease is a property right, and the

right to contract for the use of property either exclusive or limited is analogous in character, even though it be not technically a lease. The value of property is very largely dependent upon the use to which it may be put; and any limitation upon the authority to contract for its use must, in the very nature of things, impair its value. In this respect it stands upon the same footing as salable value. A contract for the use of property by which one obtains the right to its enjoyment has the elements of sale in it, as the owner's right therein is qualified by the right of use of the other party, and to that extent his interest or right of enjoyment therein is diminished. The impairment of such rights has uniformly been held to violate the constitutional prohibition. Wynehamer v. People, 13 N. Y. 376. Whatever prevents the free use of lands and goods is a deprivation of property. Bertholf v. O'Reilly, 74 N. Y. 509. The right to sell, to lease, to buy, or to hire out for a profit is an essential attribute of property, and whatever takes it away deprives the owner of his property. In re Jacobs, 98 N. Y. 98. But, aside from this consideration, the right to use the railroad for all the purposes authorized by law was the franchise and privileges which those corporations obtained. That this was a property right which could not be taken away or impaired is answered in the affirmative by every authority upon the subject of which we have knowledge. People v. O'Brien, 111 N. Y. 1, 18 N. E. 692; Boyer v. Village of Little Falls, 5 App. Div. 1, 38 N. Y. Supp. 1114. The right or privilege to contract for its use with other railroads, and thereby derive a profit, was as much a part of its franchise as was the right to lay its tracks or operate its cars. This was a source of use which made its property and franchise valuable, and the corporation could no more be deprived of this right than the right of operating in any other respect as authorized by law.

The claim that the act was permissive only, and that therefore no vested right could be obtained, cannot be sustained. If it was permissive only, it was still permissive in granting the authority to obtain a property right; and it would be a singular doctrine which permits the acquirement of property by permission, and then destroys it by withdrawing the permission through which it was obtained. This view of the law must dispose of this case in favor of the defendants; for if it be conceded that the act of 1839 is not now operative, and that the constitution and statutes have changed the law, it is sufficient answer to say that it cannot operate to devest the defendants of the right which they obtained prior thereto. We have, however, examined all of the questions presented, and reach the conclusion that, while the act of 1839 is now repealed, yet its provisions are essentially embodied in section 78 of the railroad law, and that, as to corporations which were organized prior to the adoption of the amendment to the constitution in 1875 and of the statutes since, they are not affected thereby, so far as any question here arising is concerned. The rights were expressly preserved by the saving clauses in the repealing statutes, if such were needed. If not saved, the construction which must be given to section 78, supra, must be the same as would have applied had there been no repeal, as the re-enactment must be treated as a

continuation of the provisions of the former law. As to the constitutional amendment of 1875 and the constitution of 1894, their provisions did not act retroactively, but prospectively, and consequently they do not affect the present question. People v. Railroad Co., 89 N. Y. 75. Upon this branch of the case we agree with the opinion of the learned court below, and with the opinion in Kunz v. Railroad Co. (not yet officially reported) — N. Y. Supp. ——. We are not to be understood as deciding that the legislature has no right, in the exercise of the police power, to regulate the number of cars which may be operated upon the street; but the exercise of such power is applicable equally to the corporation owning the tracks, in the operation of its cars, as to the company contracting for its use. In other words, the company has the right to operate as many cars as the law permits, whether its own or belonging to other companies.

The order should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.