(Sitting in place of the judges of the eighth circuit.)

## EDWARD S. ISOM v. LOW FARE RY.

1. CONSTITUTIONALITY OF ACT REQUIRING CONSENTS FOR CONSTRUCTION OF STREET RAILWAYS.

The necessity of obtaining the consent of a majority of abutting property owners as a prerequisite to the construction and operation of a street railway in a public street, as is provided for by Rev. Stat. 2505 (Lan. 3770; B. 1536-188) and Lan. Rev. Stat. 3765 (B. 1536-189), is not a special privilege or property right, conferred on such property owners, inconsistent with the rule that abutting owners have no rights in a street superior to those of the general public; and such section is not unconstitutional as class legislation.

2. NECESSITY OF CONSENT OF ABUTTING OWNER TO STREET RAILWAY.

A franchise granting the right to operate a street railway upon a certain street having expired, a new company seeking to construct and operate upon the same street must first obtain the consent of a majority of the abutting property owners thereon. The former use of the street for street railway purposes does not relieve the second company from the necessity of securing the consents.

[For other cases in point, see 7 Cyc. Dig, "Street Railways," §§ 194-224.—Ed.]

3. WHO MAY CONSTRUCT LINE UNDER A FRANCHISE GRANT.

A company, having the grant of right and consent of abutters to construct and operate a street railway in a public street, may transfer and assign its franchise and interests in such street; but a stranger to the franchise cannot, by reason of a grant from the council to operate over this same street, construct its line under the consents granted to the first company on the ground that the same does not place additional burdens on the abutting property.

4. WHEN A COMPANY MAY CONSTRUCT LINE UNDER ANOTHER FRANCHISE.

Whether a street railway company having the right, by reason of its franchise and consents of abutting property owners, to construct its line in a certain street can consent to another company's laying tracks in such street, under a new franchise, to the exclusion of its own tracks without the consent of two-thirds of its stockholders, *quaere?*

5. MOTIVE FOR BRINGING AN ACTION NOT A DEFENSE.

The motive that actuates one to bring an action to which he has a legal right is of no importance, and cannot be set up as a defense thereto.

6. EFFECT ON PUBLIC AS AFFECTING THE DETERMINATION OF A PRIVATE RIGHT.

The fact that the enjoining the construction of a street railway, at the suit of an individual owner of property abutting on the street affected, will work a hardship upon the public, will not suffice to defeat such owner of a legal right.

[Syllabus approved by the court.]

Cuyahoga County.

APPEAL.

**Squire, Sanders & Dempsey, J. G. White** and **T. H. Hogsett,** for plaintiff.

**Garfield, Howe & Westenhaver, N. D. Baker** and **W. H. Boyd,** for defendant.

## PER CURIAM.

This cause comes into this court upon appeal and is submitted to the court on a motion of the plaintiff, and a countermotion of the defendant, for judgment on the pleadings and admitted facts.

It is unnecessary to state in detail the averments of the pleadings. This suit is brought by an abutting property owner to enjoin the construction and operation by the defendant of a double track electric street railway on Central avenue, and the sole and only reason now urged by this plaintiff why such injunction should be allowed is, that there was not produced by the council before the passage of the ordinance granting to defendant a right to construct, maintain and operate such railroad on Central avenue, the written consent of the owners of more than one-half of the feet front of the lots and lands abutting on that portion of said street, along which it is proposed to construct such railway, as required by Rev. Stat. 2505 (Lan. 3770; B. 1536-188) and Lan. Rev. Stat. 3765 (B. 1536-189), and Rev. Stat. 3439 (Lan. 5521).

The defendant, for answer to this claim of plaintiff, says:

First, that these statutes in so far as they require the consent of owners of abutting property to the construction of a street railroad are unconstitutional and void.

It is urged in support of this contention that the occupation of the street by a street railway is a proper and legitimate use thereof and one of the uses and purposes comprehended in the original grant or dedication of the same, and not different from the use by other vehicles for transportation of passengers or by pedestrians.

We think there is some difference, and that difference is very plainly stated in the case of *Cincinnati & S. G. Ave. St. Ry.* v. *Cumminsville,* 14 Ohio St. 523, at page 545, in this language:

"So far as the carrying of passengers by this mode is concerned, it differs in nothing from the exercise of the common right of carrying them by coaches or omnibuses; and everything needing a grant, or the further authority of law, is the right to place and maintain in the highway, the necessary conveniences for this new description of carriages."

It is further held in the same case that if the easement of the abutting property owner of ingress and egress should be materially injured

Isom v. Railway.

by the building and operation of the street railroad, then he must be fully compensated for such injury.

Again, it is held by the Supreme Court in the case of *Hamilton, G. & C. Trac. Co.* v. *Parish,* 67 Ohio St. 181, 191 [65 N. E. Rep. 1011; 60 L. R. A., 531], that:

"So long as his easement of ingress and egress is not materially injured, he is without remedy, * * *. that the city authorities had the power, under the constitution, to construct and operate a street railroad on and along the street without his consent and against his will, unless restrained by a statute, provided they caused no material interference with .his easement of ingress and egress."

This would seem to be the only difference between this use of the street and any other, and because the Supreme Court has thus limited the property rights of abutting lot and landowners in streets, and having further declared in the case of *Hamilton, G. & C. Trac. Co.* v. *Parish, supra,* that the consents provided for in the sections under consideration, are not property rights, adhering to the lot, but a mere personal right in the owner of the lot, subject to bargain and sale, the defendant insists that the statute, conferring such a right, creates a favored class upon whom a privilege is bestowed, to the exclusion of others having equal rights and that the same is a violation of the trust reposed in the legislature of the state, in respect to public ways.

It must be conceded at the threshold of this investigation that every classification of individuals must be based upon some substantial, fundamental reason therefor. It is not required that every act of the legislature should operate at one and the same time on every member of society, but it is required that it must affect all who are within the reason for its enactment. The contention of the defendant herein is, that the Supreme Court having decided that the abutting-lot owner has no special rights or interest in the street on which his property abuts in excess of the rights of the general public, other than the right of ingress and egress, for which he must be compensated, if the same is materially interfered with, the creation of such class and conferring upon it such a privilege as is conferred by these statutes, were and are a mere arbitrary classification and grant special privileges upon such favored class without any fundamental reason therefor.

This would seem to be a strong position were it not that upon investigation of the reported cases in Ohio, it appears that the constitutionality of this legislation is no longer an open question in this state.

In the case of *Roberts* v. *Easton,* 19 Ohio St. 78, it was held, that such consent is a prerequisite to the power of the council to grant such permission.

In the case of *Mt. Auburn Cable Ry.* v. *Neare,* 54 Ohio St. 153 [42 N. E. Rep. 768], it was held that under the provisions of Rev. Stat. 3437 to 3443 (Lan. 5520 to 5528), inclusive, the consents of the owners of more than one-half of the feet front of the lots and lands abutting on each street to be occupied by such extension, are requisite.

In the case of *Hamilton, G. & C. Trac. Co.* v. *Parish, supra,* the nature of consents and the purposes of this legislation are fully discussed. In that case the Supreme Court says:

"Such personal rights were bestowed by the general assembly on owners of abutting lots, as a check upon the power of municipal authorities to authorize street railroads to be constructed and operated against the wishes of the owners of lots on such street."

In the opinion of *Hamilton, G. & C. Trac. Co.* v. *Parish, supra,* page 194, we find the following quotation from *Probasco* v. *Raine,* 50 Ohio St. 378 [34 N. E. Rep. 536]:

"If a statute is constitutional, it is valid, and cannot be set aside by a court, as being against public policy or natural right. There can be no public policy or right in conflict with a constitutional statute."

In that case it was sought to have the consents that had been procured by purchase held invalid, as against public policy, and the circuit court so held, but the Supreme Court reversed that holding, and in effect held that this legislation was neither unconstitutional nor against public policy. To the same effect is the doctrine announced by Judge Day in the case of *Roberts* v. *Easton, supra.*

There are other cases in which the Supreme Court considered this legislation, but the cases above cited are sufficient to show that the Supreme Court is committed to the doctrine of the constitutionality thereof, and it will not do to say that the Supreme Court has so fully considered the provisions of these sections and required the performance of the same, and expended so much time in ascertaining the purposes of this legislation and defining the rights therein granted, without regard to the constitutionality of the law. In view of the many declarations of that court, sustaining these statutes and requiring full compliance therewith, the rule of judicial subordination would require a court of inferior jurisdiction to hold the same constitutional and thus pass the question on to the Supreme Court as the only tribunal that has a right to review and reverse its declarations of the law, and therefore on this contention the defendant must fail.

The next contention of the defendant is, that in this particular case no consents are required for the extension of its lines, even though the statute be constitutional, because ever since the year 1868, this portion of the street has been devoted to street railway purposes; that

the Cleveland Electric Railway Company owned and operated a line of street railway over and along this street, the franchise therefor having expired in 1905, but notwithstanding the expiration of such franchise said railway company did continue to maintain and operate its line of railway over and upon this street until April 23, 1907, at which time, in obedience to the judgment of the Supreme Court of the United States, declaring that the term of its franchise had expired at the time first mentioned, it discontinued the operation of such railway, and within a few days thereafter removed its tracks and fixtures, but not until after the passage of the ordinance herein authorizing defendant to construct and operate its line; that in 1904, in anticipation of the expiration of the term of the grant to the Cleveland Electric Railway Company, the said council attempted, by ordinance, to grant a renewal of that franchise to the Forest City Company, which ordinance was declared invalid by the Supreme Court of Ohio; that in September, 1906, the city council of the city of Cleveland authorized the Forest City Railway Company, by ordinance, to extend its line, by constructing, maintaining and operating a double track electric railway over and along the portion of this street now sought to be occupied by this defendant, and that at that time there were procured and produced to the city council the requisite consents of more than one-half of the lot and landowners abutting on said portion of said street; that by reason of these facts, all of which are admitted, this street had become and was a street devoted to street railway purposes, and in the nature of things, no further consents would be required.

Laning Rev. Stat. 3765 (B. 1536-189) provides, among other things, that:

"No change or extension of any existing route shall be granted over any street or streets now unoccupied by street railway tracks, unless the consent of a majority of the owners of property abutting on such street or streets shall have been first obtained as now by law required."

The ordinance under which this defendant claims the right to construct, maintain and operate this street railway, provides that:

"If at the time the grantee herein shall attempt to execute the rights conferred by this ordinance in said Central and Quincy avenues S. E., there shall have been constructed any street railway tracks, the grant for which has not expired, the right hereby is limited to a right to use jointly with the owner thereof such tracks," etc.

The agreed statement of facts shows that said Central avenue was not then occupied by any such tracks, but that as a matter of fact the grant to the Cleveland Electric Company had then expired and the tracks were then wrongfully and unlawfully in said streets, and were

removed within a few days thereafter. Even if these tracks of the Cleveland Electric Railway Company can be considered as tracks occupying said street, which by the terms of Lan. Rev. Stat. 3765 (B. 1536-189), would make unnecessary the procuring of consents, yet by another paragraph of the same section it is provided that:

"Nothing herein contained shall authorize the extension of existing street railway routes or any portion thereof over and along existing tracks or portions thereof for a longer period than the terms for which the original franchises for such roads or routes existing at the time of the passage of this act, were granted."

So that the term of the franchise of the Cleveland Electric Railway Company having expired, the rights of this defendant company to operate jointly with it over its tracks must necessarily expire with that company's grant. If that were not true, then the city council could in this manner renew a franchise over a street occupied by a street railway company to a company other than the one in the original grant, or its assigns. The Supreme Court of this state has recently held in reference to this particular street, that this cannot be done. It is sufficient to say that if it cannot be done directly, it cannot be done indirectly. It is therefore clear from the agreed statement of facts that this street was not then occupied with tracks of any railway company then having the right to operate it for any term whatever, and this grant does not come within the exceptions contained in said section.

It is insisted, however, that the character of this street as a street devoted to street railway purposes has been established, and having once been established and the consents having been procured and produced authorizing the same, that there is no longer any purpose in again requiring such consents to be procured and produced.

The Supreme Court in the case of Mt. Auburn Cable Ry. v. Neare, supra, page 153, declares it to be the law that:

"In the extension of a street railway over streets unoccupied by any road under the provisions of Secs. 3437 to 3443 [Lan. 5520 to 5528], Rev. Stat., inclusive, the consents of the owners of more than one-half of the feet front of the lots or lands abutting on each street to be occupied by such extension are requisite."

The admitted facts in the case at bar do not distinguish it from the above case, and therefore, the consents were necessary to a valid grant.

It is also insisted that there was filed in September, 1906, with the clerk, and produced to the council of said city, the requisite number of consents, and that said council thereupon granted a valid franchise to the Forest City Street Railway Company to construct, maintain and operate a double track electric street railway over and upon this portion

Isom v. Railway.

of Central avenue; that said Forest City Street Railway Company has the right under said ordinance to construct and maintain the same, and that this company is only proceeding to do that which another company has the absolute right to do, and for that reason construction by this defendant cannot injure or affect the plaintiff in any particular, and that a court of equity ought not to interfere for any whimsical reason the plaintiff may have, that would induce him to prefer that these tracks should be constructed by the Forest City Railway Company, instead of this defendant.

It is further claimed that by the limitations of Sec. 4 of the ordinance under which this defendant claims the right to construct these tracks, that no more than two tracks shall be constructed, and that the Forest City Street Railway Company knew of the limitation in Sec. 4 of this ordinance, and assented and consented to the same, and that by no possibility can this street be burdened by four tracks, instead of two, even though this defendant should construct the tracks instead of waiting until the Forest City Street Railway Company should do so.

It is denied by the plaintiff that the Forest City Street Railway Company assented or consented to the limitation in Sec. 4 of this ordinance under consideration, but for the purposes of plaintiff's motion, if that averment of the answer would amount to a defense, the motion should be overruled.

Notwithstanding it is conceded that the Forest City Railway Company has the right to construct these tracks, it does not necessarily follow that it will do so. It may forfeit such right, or abandon the same. If that company never asserts its right against the plaintiff and other nonconsenting abutters, that failure must operate for their benefit, and not for the benefit of a stranger to its franchise. True, that company may assign its franchise and the assignee thereof may assert the right to construct such road, but it is not permissible for a third party to claim the rights of the Forest City Street Railway Company against nonconsenting abutters. No matter how remote the chance may be that the Forest City Street Railway Company, or its assigns, will not assert its right in this street, yet this plaintiff is entitled to that chance.

If it be conceded for the purpose of this motion that the Forest City Street Railway Company in some way has assented or consented to the limitations in Sec. 4 of this ordinance, and by reason thereof it would be forever estopped from constructing any line of railway over and along this street other than that proposed to be constructed by this defendant, it would still be immaterial, as that company or its assignee would be the only one that can make any claim under its franchise. If this road were constructed, we think the limitation of Sec. 4

of this ordinance is such as would prevent the ordinance from being declared invalid for want of consents, because no consents are required to authorize the city council to grant the right to a street railway company to extend its lines over and upon the tracks of another, for and during the term for which such company has a right to maintain and operate its road, but, in so far as it authorizes the extension in streets unoccupied by a street railroad, consents would be required without which that portion at least of the ordinance authorizing the construction of new tracks would be invalid. Therefore, upon this contention the defendant must fail.

It is insisted, however, by the defendant herein, that the necessary consents were in fact produced to the council before the passage of this ordinance under which it claims the right to construct, maintain and operate its road over and upon this portion of this street.

It does appear from the admitted facts in this case that enough consents were produced to the council, if all were available. These consents were of various kinds. Some of them were general in their nature, some of them specified particularly the Forest City Street Railway Company, some specified the Forest City Railway Company and the Cleveland Electric Company, and some specified the Cleveland Electric Company only. It is admitted that the rejection of any one class of these limited consents would reduce the entire amount below the requisite majority.

It is also admitted that all of the consents procured and produced to the council by the Forest City Railway Company at the time of the passage of the ordinance granting it a franchise to construct, maintain and operate a double track electric railway over and upon its street, were part of the consents produced to this council at the time the ordinance under which the defendant claims was passed, and it is admitted that if these consents could not be considered by the council, there were not sufficient others to confer jurisdiction.

It is claimed, first, that consents cannot be limited to any company, but that they operate in favor of the company to which the grant is made.

The Supreme Court of Ohio, in the case of *State* v. *Bell*, 34 Ohio St. 194, held, that these consents by whomsoever obtained, inure to the benefit of the lowest bidder.

In the opinion, at page 197, the reasoning of the court is as follows:

"Equally certain it is that the consents mentioned in Sec. 412 need not, in terms, be given to the person who is the lowest bidder; for the contract can be awarded to him alone, and the consents, it matters not by whom obtained or to whom given, are in substance assent to the con-

Isom v. Railway.

struction and operation of the railway in the designated streets, and hence must inure to the benefit of the lowest bidder.''

In the case of the construction of a new road the franchise must be granted to the lowest bidder. The city council has no discretion in that respect and the consenters when they sign the consents must be held to know that under the law, neither they nor the city council can designate to whom the franchise shall be granted. The statutes of our state require that it be granted to that person or corporation that offers to carry passengers for the lowest rate of fare. So that any attempt to limit such consents or to designate the beneficiary of the same, must prove abortive. That reasoning does not apply with equal force to the extension of an established route. The proposition in the latter case is as to whether or not a known company having either an established line or a right to construct such line shall have the further right to extend its road. No one is called upon to ·bid. No one can bid for this franchise, because one of the terms of its grant is that no additional fares whatever shall be charged for carrying passengers over this proposed extension. The only possible profit would be from the accumulation of business. It is an entirely different question whether an abutter can in this case limit his consent to a specific company or individual, from the question presented, when the construction of a new road is contemplated. Aside from this, it is admitted that the same consents that were produced to the council at the time it passed the ordinance granting to the Forest City Railway Company its franchise, in September, 1906, were produced when this ordinance was passed, and that if these consents which clothed the city council of Cleveland with jurisdiction to pass the ordinance granting the franchise to the Forest City Railway Company cannot be counted, then this ordinance was passed without a sufficient number of consents being presented.

We are clearly of the opinion that these consents had expended all their vitality in clothing the city council with jurisdiction to pass the ordinance granting the franchise to the Forest City Railway Company. They had served their purpose, fulfilled their mission, and could be of no further use or effect. True, if the ordinance passed by reason of these consents were an invalid ordinance, they still could be used for the purpose of granting a valid ordinance; but it is conceded here, for the purpose of this case, that the franchise of the Forest City Railway Company is a valid franchise, and, therefore, the purpose of these consents had been accomplished, except, however, that the consenters must be held to abide the effect of that grant for the term thereof, provided such term did not exceed the statutory limitation. This would include the right of renewal with the same company or its assigns. and

the right to grant the joint use of this company's tracks to other companies for the purpose of the extension of their lines. Aside from this, they could serve no other purpose, and the council had no right to consider or count the same in ascertaining whether or •not a majority of consents •had been produced.

The holding of the Supreme Court, in the case of *Roberts* v. *Easton, supra,* is clearly to this effect. On page 88, the court say:

"The original assent" [consent] "therefore, merged in the completed action of the city authorities."

Having arrived at this conclusion, it is idle further to discuss the limited consents. If these consents of the Forest City Railway Company are to be excluded, this franchise was granted without the requisite number of consents and did not confer on the defendant any right or authority to construct tracks along and over this street.

Upon another proposition not made in the pleadings or argued by counsel, we are of the opinion that it might be urged with much force that the municipality was without authority of law to grant the franchise of the defendant company in its present form, either with or without the statutory consents. It undertakes to grant to the Low Fare Company, not alone the right to use the tracks of the Forest City Company, but to pre-empt the right of way, and construct its own tracks to the exclusion of the tracks of the Forest City Company.

When the Forest City Company obtained its grant, it secured the right to construct its own tracks in the street, and, having done so, the right to make traffic contracts with other street railway and interurban companies for the use of its tracks.

In the case of *Ingersoll* v. *Railway,* 157 N. Y. 453 [52 N. E. Rep. 545; 43 L. R. A. 236], Chief Justice Parker quotes approvingly from *Roddy* v. *Railway,* 32 App. Div. 311 [52 N. Y. Supp. 1025], and following:

" 'The right or privilege to contract for its use with other railroads, and thereby derive a profit, was as much a part of its franchise as was the right to lay its tracks or operate its cars. This was a source of use which made its property and franchise valuable, and the corporation could no more be deprived of this right than the right of operating in any other respect as authorized by law.' "

Judge Parker also says, in the opinion in that case:

"Salability is an essential element of property, and the destruction or the diminution thereof is a taking of property that cannot be done except through the exercise of the right of eminent domain or of the police power."

## Isom v. Railway.

It is a right, therefore, secured to the Forest City Company, both by statute and by contract, which neither the city nor the abutting lot owners can take away or impair. Yet counsel for the defendant concede that this is the effect of the grant to the Low Fare Company when they argue that new consents are not necessary, because no additional burden is placed upon the street. The tracks of the Forest City Company are legislated out of the street.

A grant to construct tracks in a street cannot be duplicated over the same right of way without impairing vested rights.

An ordinance which assumes to make such a grant would seem to that extent to be void, as violating the obligation of contracts.

It is said that the Forest City Company is consenting to this usurpation. Unless the answer means that the stockholders are consenting in the statutory way, it is no defense. The company cannot consent against their interests. It cannot, under the statutes, sell or lease its franchise without the consent of two-thirds of its stockholders, and even then it must make terms with the dissenting stockholders. Much less can it stand by and see another company appropriate one of its most valuable rights without compensation, claiming, at the same time, the privilege of using the consents which support its franchise, to legalize the appropriation.

A street railway franchise, carved out of the sovereignty of the state, is not a thing to be played with, in the courts or out of them. Under the statute law, the municipality cannot release the company by consent from any of its obligations or liabilities imposed, by the term of its grant, during the life of its franchise. A fortiori, it cannot be released from any of the obligations and liabilities imposed upon the city by the contract.

It is said that the city reserved the right to revoke the franchise of the Forest City Company. Upon what terms and for what reason revocation may be had, is not stated; but in any event, it must be exercised with respect to the inviolability of private property.

The next contention of the defendant is, that this plaintiff does not bring this action in good faith, but sues for the benefit of another.

It will be noted that this action is brought by the plaintiff in his own behalf only, and not in behalf of all others similarly situated. It is, in fact, identical with the case of Hamilton, G. & C. Trac. Co. v. Parish, supra. The answer in that case contained practically the same defense, word for word, with this one, and the Supreme Court held that it did not amount to a defense. The opening paragraph of the opinion, delivered by Judge Burket, is as follows, page 189:

38 O. C. C. Vol. 29.

"The contention in the pleadings and finding of facts as to whether Mr. Parish brought and prosecuted the action in good faith, is of no importance, because if he had a legal right which he sought to protect by an action in a court of justice, the motive which induced him to bring 'the action cannot be inquired into.''

It is true that this announcement of the law does not find its way into the syllabus of that case; yet it is not obiter, as that was one of the questions made in the case and necessary to be disposed of to reach a decision thereof. That case being identical with the one at bar, it is unnecessary for this court further to discuss this defense.

It is urged that it will result in great hardship to the public to permit one individual to obstruct the construction and operation of this street railway; but that cannot be true, for if a majority consent, the minority must submit. That principle obtains everywhere in our form of government. If a hardship result to the public, the fault is with the legislation controlling this subject. A court is not permitted to legislate, but only to declare and enforce the law as it finds it, and any departure from this rule would be fraught with far more serious danger to the welfare of the people than mere temporary annoyance. If this be the law, the ear of the court cannot be open to arguments of expediency. These must be directed to the law-making power of the state.

Upon the pleadings and the admitted facts the motion of the plaintiff for judgment will be sustained, and the defendant will be enjoined from constructing tracks in and upon that part of Central avenue described in the petition. The defendant will not be enjoined from jointly operating any tracks that may be constructed therein by the Forest City Railway Company, or its assigns, and the decree may be drawn accordingly.

Motion for new trial will be overruled, exceptions noted.